ADAMS *against* SPALDING and others.

Legatees may sustain an action on the probate bond, in the name of the judge of probate, against executors having assets for the payment of legacies, to recover such legacies.

Where the testator by his will directed, that the rents and profits of his estate, remaining after the payment of certain annuities and legacies, should be annually paid to his sister and his three brothers, one quarter to each, during the term of their natural lives, and during the life of the survivor of them; and bequeathed all the residue of his estate to the children of such sister and brothers, *viz.* one quarter part to the children of each, and such as should legally represent them; and in case of the death of either of his said sister and brothers, the children of such deceased one should be entitled to their quarter; and one of the brothers died leaving children; it was held, that such children were entitled to receive their father's share of the estate, although the testator's sister and two of his brothers were still living.

The testator by his will gave to his kinsman, *L.*, and the sons of his three brothers, 200 dollars, each, on condition that they should severally obtain a college education and arrive at the age of 22 years, to be paid, by his executors, when due, out of the rents and profits of his estate.  One of the testator's brothers is dead; another is a widower, in the 86th year of his age; another is in his 75th year, having a wife aged 61; *L.* is a farmer, 53 years old; the son of one brother is 25 years old, and born after the testator's death; the son of another brother, 53 years old, having a wife and four children; the son of another brother, 35 years old, having a wife and two children.  In a suit against the executors for the estate in their hands, it was held, that they could not retain it for the payment of such legacies; for, with respect to after born children of the testator's brothers, the contingencies on which the legacies depended were too remote and improbable; besides, it may well be doubted, whether the testator intended them for any such after-born children; and the nephews of the testator born before his death, being settled in life and considerably advanced in years, are to be considered as having relinquished the benefit of such legacies.

Where the testator, by his will, directed a sum of money from his estate to be retained in the hands of his executors, for the purpose of paying certain annuities and legacies, to be kept on interest so long as such annuities and legacies should become payable; it was held, that the executors were chargeable with interest on this fund, crediting them with the amount paid on such annuities and legacies, and a reasonable compensation for their services.

THIS was an action on a bond, given by the defendants, as executors of the will of *Asa Spalding*, Esq., deceased, to the judge of probate, predecessor of the plaintiff in office.  The defendants set out the condition, which was in the form prescribed by statute, and pleaded performance generally.  The plain-

tiff, in the replication, assigned several breaches; which were traversed by the defendants; and thereupon the parties joined issue.

The cause was tried at *New-London, September* term, 1830, before *Bissell*, J.

The action was brought for the children of *Rufus Spalding*, deceased, claiming as legatees and devisees under the will of *Asa Spalding*. The provisions of that will, material in the present case, are the following : " I give to my faithful and beloved wife, *Lydia*, 1200 dollars, yearly, to be paid to her in half-yearly payments, by my executors, out of the rents and profits of my estate, so long as she shall remain single and unmarried ; but if she shall marry again, then my will is, that after such marriage, instead of 1200 dollars yearly, my executors shall pay her, for her sole and separate use, 600 dollars *per* year, during her natural life, *viz.* 300 dollars half yearly.

" I give to such sons of my three brothers, *Ebenezer, Rufus* and *Luther*, as shall obtain a liberal education, and obtain the degree of bachelor of arts from any approved college in the *United States*, and shall also arrive at the age of 22 years, 200 dollars, each, to be paid out of the rents and profits of my estate, by my executors, as the same may become due.

" *Item*, I give to *Thomas Leffingwell Shipman, Asa Spalding Ladd*, and *Asa Spalding Pierce*, on condition they severally acquire a liberal education and obtain a degree of bachelor of arts from any college in the *United States*, and also arrive at the age of 22 years, 200 dollars, each, to be paid by my executors, when such legacy may become due, out of the rents and profits of my estate.

" All the residue of the annual and net proceeds of all my estate, both real and personal, *viz.* the rents and profits thereof, I order and direct my executors to pay, annually, to my beloved sister, *Mary Cady*, and my beloved brothers, *Ebenezer, Rufus* and *Luther Spalding*, one quarter to each, during the term of their natural lives, and during the life of the survivor of them.

" All the residue of my estate, both real and personal, subject to the use and payments of the annuity and legacies before-mentioned in this will, I give and devise the same to the children and issue of my said sister, *Mary Cady*, and of my three brothers, *viz.* one fourth part thereof to the children of each of my brothers and sister, and such as shall legally repre-

sent them, and to their heirs and assigns forever.   And in the
case of the death of either of my brothers or sister, my will then
is, that the children of such deceased brother or sister, be enti-
tled to their quarter; leaving in the hands of my executors
6000 dollars of such quarter, during my said wife's widowhood,
and 3000 dollars, in case of her second marriage, for the pur-
pose of paying the annuities and legacies in this will, to be
kept on interest so long as said annuities and legacies shall
become payable."

It was admitted, by the defendants, that no inventory of the
testator's estate had ever been exhibited to the court of probate,
and that they had never rendered their administration account.
In excuse for these omissions, they exhibited in evidence two
documents, one signed by most of the legatees and devisees
under the will, and the other by some of them, but neither by
those for whose benefit this action was brought.   The court
instructed the jury, that such being the fact, the plaintiff was
entitled to a verdict for the breach in question; but for this
cause alone, he could recover only nominal damages.

The plaintiffs in interest claimed to recover their proportion
of 3000 dollars, being the one fourth part of 12,000 dollars,
which they claimed fell due upon the death of Mrs. *Lydia
Peck,* formerly the wife of the testator named in the will, to-
gether with the interest on said sum, deducting therefrom their
proportion of the annuity of 600 dollars, payable to her under
the will, from the 6th of *October,* 1830, the date of a receipt
given by the claimants to the executors, to the 18th of *August,*
1835, the time of Mrs. *Peck's* death.   They further claimed
to recover the whole interest from the death of Mrs. *Peck,* up
to the time of trial.

The defendants denied the right of the plaintiff to recover on
this issue, claiming, 1. that under the provisions of the will,
and in connection with the facts about to be stated, an action
on the probate bond does not lie; but that the relief of the plain-
tiffs, if any they have, is in a court of chancery : 2. that un-
der the provisions of the will, no part of said 12,000 dollars is
payable until after the death of all the brothers, and the sister
of the testator : 3. that no part of said sum is due, inasmuch as
some of the sons of the brothers of the testator, or *Asa Spal-
ding Ladd,* one of the legatees mentioned in the will, may yet
acquire a liberal education, and obtain the degree of bachelor
of arts, and so entitle themselves to the legacies therein given.

The facts in regard to this claim, are as follows. *Ebenezer Spalding*, one of the brothers of the testator, is a widower, and in his 86th year. *Luther Spalding*, also a brother, and one of the executors, is in his 75th year; and his wife is about 61 years old. *Charles Spalding*, son of *Luther*, is aged about 25 years, and was born after the death of the testator. *Bela P. Spalding*, a son of one of the brothers, and one of the executors of the will, is 53 years of age, and has a wife and four children, the youngest about 22 years of age. *Luther P. Spalding*, son of *Rufus Spalding*, and one of the plaintiffs in interest, is about 35 years old, and has a wife and two children. *Asa Spalding Ladd* is about 50 years old, a farmer, in moderate circumstances.

The defendants further claimed, that if liable at all in this action, they were not under the will liable for any interest on said sum of 12,000 dollars, during the life of Mrs. *Peck*.

In regard to the first claim, the court charged the jury, 1. that the remedy of the plaintiffs in interest was upon the probate bond, and not in chancery: 2. that the plaintiffs were entitled to recover their proportion of the one quarter of said sum of 12,000 dollars, although some of the brothers of the testator are yet living: 3. that the will was to receive a reasonable construction, and, upon the facts admitted, the executors were not justified in retaining any part of said 12,000 dollars in their hands: 4. that the executors were liable to account for the interest on said 12,000 dollars, during the life of Mrs. *Peck*, deducting therefrom the annuity paid her, and deducting also a reasonable compensation to them for their trouble and risk in the management of the fund.

The jury returned a verdict in conformity to these directions; and the defendants moved for a new trial.

*Goddard* and *Foster*, in support of the motion, contended, 1. That an action at law on the bond is not the proper remedy in this case. In the first place, it may well be doubted whether any action at law will lie for a legacy. *Deeks* & ux. v. *Strutt*, 5 *Term Rep.* 690. *Pelletreu* v. *Rathbone* & al. 18 *Johns. Rep.* 428. In *Massachusetts*, legacies are recoverable in actions at law, by force of statute provisions; but *Parsons*, Ch. J., says, explicitly, that at common law no action lies to recover a legacy, or damages for the non-payment of it. *Far-*

*New-London, July, 1837.*

*Adams v. Spalding.*

well v. *Jacobs,* 4 *Mass. Rep.* 634.    But secondly, if an action at law will lie against an executor for a legacy, it will not lie on the probate bond against principal and sureties.    *Willey* v. *Paulk* & al., 6 *Conn. Rep.* 74.    *Braxton,* exr. v. *Winslow* & al., 1 *Wash. Rep* 31.    *Farwell* v. *Jacobs,* cited above.    In this action, the claims of the executors for compensation cannot be adjusted.    Thirdly, a court of chancery, and that alone, is the appropriate tribunal to determine when the contingencies contemplated by the will, have happened, and when the trust fund is to be divided.    *Isham* & al. v. *Gilbert,* 3 *Conn. Rep.* 166.    *Judd* & al. v. *Bushnell* & al., 7 *Conn. Rep.* 205.

2.  That the plaintiffs in interest are not entitled to recover any portion of the trust fund, while any of the brothers or the sister of the testator are living.    During that time, this fund, by reasonable construction of the will, is to remain in the hands of the executors, and the annual proceeds of it, after paying the annuity of any legacies charged upon it, which may become payable in that year, are to be divided among those brothers or such sister, " and the survivors of them."    These last words, on any other construction, will be wholly inoperative.

3.  That the contingencies have not yet all happened, which, under the will, may happen, before the plaintiffs in interest can claim their share of the trust fund.    *A. S. Ladd,* one of the legatees named in the will, is living, and may acquire a collegiate education and be entitled to the sum of 200 dollars.    Some of the brothers now have sons, who may be entitled to the same legacy ; and all may have sons born to them, who may become entitled.    The law allows the possibility of a man's having issue, during his natural life.

4.  That at all events, the defendants are not liable to these plaintiffs for the interest on the 12,000 dollars, during the life of Mrs. *Peck,* deducting therefrom the annuity paid her, together with a reasonable compensation for their trouble and risk in managing the fund.    The plaintiffs admit, that the defendants have a right, under the will, to retain that sum during her life.    While thus remaining in their hands, it is, to all intents and purposes, a part of the testator's estate.    Hence, the interest of it, after paying the annuity and legacies, being a portion of the net annual proceeds, is expressly given to the brothers and sister of the testator, and the survivor of them.

If this interest be not paid to such brothers and sister, an action at law in their favour will lie against the executors to recover it. Shall they be bound to pay it twice ?

*New-London,*
*July,  1837.*
Adams
*v.*
Spalding.

*Isham* and *Brainard,* contra, contended, 1. That the plaintiff's remedy was on the probate bond.   The practice justifies this course ; and it has been repeatedly decided, by this court, that you cannot go into chancery for the settlement of a deceased person's estate.   *Beach* v. *Norton,* 9 *Conn. Rep.* 182. *Stannard* v.   *Whittlesey,* Id.  556.   If the action is rightly brought, the omission of the defendants to exhibit an inventory and to settle their administration account, is an unquestionable breach of  the bond, and entitles  the  plaintiffs to a  verdict on this  issue, unless the  documents exhibited by the defendants, on the trial, furnish a justification or excuse for such omission. But as neither of these papers was signed by those for  whose benefit the action is brought, their rights cannot be affected by them.

2. That on the death of *Rufus Spalding,* one of the testator's brothers, his children  became  immediately entitled to the share given by the will to him during his life.    The expression used in the  devise to the  sister and  brother—"one quarter to each, during the term of their natural lives, and during the life of the survivor of them "—is explained by the subsequent language—" and  in case of the death of either of  my brothers or sister, my will then is, that the children of such deceased brother or sister, be entitled to their quarter, leaving," &c.

3. That the executors are  not justified in  retaining  any longer in their hands the fund provided for the payment of the annuities and legacies given by the will.   The widow  having first married and then  died, the annuities are at an end ;  and as there are no candidates for college honours among the legatees, the contingencies, on the happening of which the legacies were to be paid, are  past.   It is too much  to  claim, that  this fund can be retained, for the purpose of educating the testator's nephews, until all his brothers and  nephews are  dead ;  but nothing short of  the  establishment of such a claim will justify a further detention.

4. That the persons entitled to the fund, are  also entitled to the interest on  it, except so much as has been applied in  payment of the annuity.   By the will, the executors were directed to *keep this fund on interest,* for the purpose of paying the

annuity and the legacies, so long as such annuity and legacies should become due and payable. Neither during the life of Mrs. *Peck,* nor afterwards, was the surplus interest given to the executors.

CHURCH, J.    I do not understand, that any claim is made, in this case, that a technical breach of the condition of the probate bond had not been occasioned, by reason of the neglect of the executors to exhibit an inventory and settle their administration accounts according to law and the condition of their bond ; for which neglect, so far as the claimants in this action were interested, there was no excuse. *Edwards* v. *White* & al. ante 28.

The court charged the jury, that the plaintiff could sustain this action, for the benefit of the legatees interested, for their proportion of the sum of 3000 dollars, bequeathed and belonging to the children of *Rufus Spalding,* deceased. Was not this instruction correct ?    The defendants insist, that no action at law will lie against an executor for the recovery of a legacy, unless there has been an express promise to pay it, founded upon the consideration of assets. It is quite too late to discuss this point : it has been too frequently and firmly settled, in this State, adversely to the defendant's claim to be again drawn in question. *Lamb* v. *Smith,* 1 *Root* 429. *Spalding* v. *Spalding,* 2 *Root,* 271. *Goodwin* v. *Chaffee,* 4 *Conn. Rep.* 163. *Knapp* v. *Hanford,* 6 *Conn. Rep.* 170. 7 *Conn. Rep.* 132. By these cases, it has been settled, that an executor, having assets for the payment of legacies, is liable in an action at law upon an implied promise to pay them. We think the decision in these cases to be the result of familiar common law principles. If *A* has in his hands, as executor, money for the payment of a legacy due to *B,* why does not the law imply his promise to pay it as much as if he had received the same amount of money to *B's* use in any other capacity ?    A contrary doctrine is holden in *England ;* the result, however, rather of policy than principle. In the case of *Deeks* & ux. v. *Strutt,* 5 *Term Rep.* 690. Lord *Kenyon* places his opinion upon what he supposes would be the great inconvenience of a legal jurisdiction over legacies. He seems to be enamoured with what he is pleased to call the admirable system, which has been founded in a court of equity on this subject, and which, he fears, will fall to the ground, if a court of law could enforce

the payment of a legacy. In this State, we have no such sys-
tem to jeopardise, and no policy, which, we believe, will conflict
with principle in this matter.

*New-London,*
July, 1837.

Adams
*v.*
Spalding.

The only plausible reason urged in the *English* courts for
exclusive equity jurisdiction, in regard to the recovery of lega-
cies, is, that courts of law can impose no terms upon legatees or
others, who may be entitled to receive payment of a legacy.
And the case is put of a legacy given to a wife ; and if the hus-
band could recover it at law, no provision could be made for
the wife or family. The same objection may be made against
a recovery by the husband of any debt or demand due to his
wife. It is not a matter of necessity that terms should be im-
posed upon parties, before they are entitled to receive legacies ;
and whenever it becomes necessary that a court of equity
should interfere, for this purpose or for any other, an injunc-
tion to stay proceedings at law may always be had, until a
court of chancery can settle and adjust all the equities of the
case. The possibility of such a necessity should not oust a
court of law of its entire jurisdiction.

But the question here is, not whether an action of *assump-
sit* will lie to recover a legacy upon a promise, either express or
implied, but whether an action upon a probate bond can be
sustained for that purpose. This remedy, in our judgment, is
peculiarly appropriate. It certainly is the duty of an executor
having assets to pay the legacies ordered by the will: for what
has he executed his bond, or why does the law require it of
him, unless it be to furnish an appropriate remedy against him
and his sureties for *every neglect* of his official duty ? One of
the conditions of his bond, is, that he will discharge the office
and duty of executor of the will and execute the same, and
settle the estate according to its provisions ; a condition, which
he certainly disregards, if he, having a sufficiency of assets, re-
fuses to pay the legacies. He need be placed in no jeopardy :
the statute enables him to secure himself against contingencies,
by requiring of devisees and legatees a bond to indemnify him
against all future claims of creditors. *Stat.* 205.

There is nothing in this will, connected with the facts of the
case, which, in our opinion, renders the interference of a court of
equity necessary. It was contended, that a court of law could
not adjust the claims of the executors for compensation.
There is no more difficulty in doing this, than in fixing the

compensation of any other agent, in an action at law, who is entitled to reasonable pay for his services. At any rate, the defendants might and should have settled with the court of probate their administration accounts; and in that way, the amount of compensation could well have been settled, and the amount in this action deducted from the plaintiff's demand.

The court charged the jury, that the children of *Rufus Spalding*, the claimants in this action, were entitled to receive their proportion of the unexpended fund, remaining in the hands of the defendants, although some of the testator's brothers were yet living. There is no error in this opinion. The testator directs, that the rents and profits of his estate remaining after payment of certain legacies, shall be annually paid to his sister, *Mary Cady*, and his three brothers, *Ebenezer*, *Rufus* and *Luther*, one quarter to each, during the term of their natural lives, and during the life of the survivor of them. And all the residue of his estate he bequeaths to the children of such sister and brothers, *viz.* one quarter part to the children of each of his said sister and brothers, and such as shall legally represent them; and in case of the death of *either* of his said sister and brothers, then the children of such deceased one to be entitled to *their quarter*, &c. We cannot, from the language of this will, nor from any circumstances disclosed in the case, perceive any intention in the testator to create an accumulating fund to await the death of all his brothers and his sister before its distribution; nor any intention that either of the surviving brothers or the sister should be entitled to any greater share, during his or her life, than one quarter of the rents and profits. But on the contrary, we think it manifest, that his purpose was, to assure immediately to the children of any dying brother or sister the share which such brother or sister had been enjoying. His brothers and sister were the first objects of the testator's bounty, and their children his ultimate objects; but the children representing their parents were intended to come in for their shares, as their parents' claim should successively become extinct by death. The father of the present claimants, *Rufus Spalding*, having died, these, his children, are now entitled to their proportion of the one quarter intended for them.

The court further instructed the jury, that the executors were not justified in retaining any part of the said sum of 12,000 dollars in their hands. The executors attempt to justi-

fy such retention, by the fact that some of the sons of the broth-
ers of the deceased, and also *Asa Spalding Ladd*, are yet liv-
ing, and may become entitled to the legacies of 200 dollars,
each, bequeathed to them, by acquiring a liberal education at
some *American* college. If there are no sons of such brothers
now living, who can acquire such an education, can any such
be born hereafter? If the ages of the surviving brothers did
not impose a physical impossibility of such an event, yet such
are the number and nature of the contingencies upon which it
must depend, that it would be trifling with the administration
of justice to permit ourselves to be influenced by the possibility
of such an occurrence. There are but two surviving brothers
of the testator, *Ebenezer*, a widower, aged 86 years, and *Lu-
ther*, aged 75, whose wife is 61 years old. If *Luther* should
survive his wife, will either *Ebenezer* or himself contract mar-
riage? If they shall, will a child of such marriage be born to
them, in their very advanced age? Will it be a son, and re-
ceive a liberal education, and arrive at the age of 22 years?
We cannot conceive it possible, that the testator intended that
any of the legacies bequeathed, should depend upon contingen-
cies so remote and improbable.

Besides, we very much doubt whether the testator intended
these legacies for any after-born children of his brothers. The
language of the will does not support such an intention. The
brothers of the testator then had sons. These sons he knew;
and they were the objects of his bounty; and we cannot believe
he contemplated such a delay in the payment of his legacies
and the settlement of his estate, as would be produced, by a
waiting for the birth of children until some future, remote and
indefinite period, and then 22 years longer. If this construc-
tion of the will be the true one, then the executors are not jus-
tified in retaining any moneys in their hands for the benefit of
any nephews of the testator to be born hereafter, nor for the
benefit of *Charles Spalding*, who, though now alive and 25
years old, was born after the death of the testator.

But still it is claimed, that there are are nephews still living,
born during the life-time of the testator, who may yet receive a
liberal education at some of our colleges, and come in hereafter
to claim the legacies of 200 dollars. *Bela B. Spalding*, one
of these nephews, is 53 years old; and *Luther P. Spalding*,
another nephew, is 35 years old; and both have wives and

children.  *Asa Spalding Ladd,* another legatee of the same character, is 50 years of age.  The testator knew, what every body else knows, that the colleges of this country had been founded and endowed for the education of young men, and not of old ones; and he intended these legacies to aid his young nephews in obtaining a liberal education, according to the usual and well known course of *American* colleges.  And we hold, what the testator never supposed would be doubted, that these legacies, intended for the education of his nephews, not having been required for that purpose, until after the legatees became settled in business and considerably advanced in years, had been waived and relinquished, and had fallen into the *residuum* of the estate.  The instruction given to the jury, in this part of the case, therefore, was very clearly correct.

We feel equally confident, that the direction given to the jury on the question of interest, in this case, was proper.  The testator directed, that the fund remaining in the hands of the executors should remain on interest; and it may well be presumed, that it has.  And without any such direction, the duty of the executors would have been to render this fund productive.  But it is not intimated, that the accruing interest, or any portion of it, was intended as a bounty to the executors.  As a matter of law, neither an executor nor any other trustee, may make profits to themselves of a trust fund; they are accountable for all.  To whom, then, shall interest be paid, where no other provision is made, unless it be to the person entitled by law to the principal?  To this sum, in such case, interest is incident, as a matter of law.

We do not advise a new trial.

The other Judges were of the same opinion, except HUNT-INGTON, J., who gave no opinion.

New trial not to be granted.