THE ATTORNEY GENERAL, EX REL. JOSEPH L. MINER, v. CHAS. A. LORMAN ET AL.

*Manufacturing corporations—Purpose of incorporation must be clearly stated in articles of association—Information to test legality of organization—Practice—Manufacture of ice for market.*

1. The articles of association of a corporation organized under Act 41 Session Laws of 1853 (Section 4004, How. Stat.), entitled "an Act to

authorize the formation of corporations for mining, smelting or manufacturing iron, copper, mineral, coal, silver or other ores or minerals, and for other manufacturing purposes," must state distinctly and definitely the purpose for which the same is formed, and if they fail to state a purpose for which the statute authorizes a corporation to be formed it will not be legally incorporated, and its articles will not warrant the exercise of corporate action. If such a purpose is stated, and the other statutory requirements are complied with, a legal corporation is created with authority to act as such. In either case the purpose and intent must be ascertained solely from the articles and can not be aided, varied or contradicted by testimony or averments, *aliunde* the instrument itself.

2. The articles of association of a corporation claiming to be organized under said act, declared that "the purpose for which said association was formed was to put up, pack and manufacture for market, Detroit river and lake ice and to distribute and sell the same."

   *Held*, that they expressed a purpose such as the statute authorized the formation of corporations to carry on. That it was unnecessary for the articles to state the means or methods of manufacture, nor is the court to presume that the undertaking would be incapable of accomplishment.

3. Section 8635, How. Stat., under which the information in this case is filed, only applies to cases where it is claimed that a number of persons assume to act as a corporation, within this State, without legally being incorporated, and such an information may be filed without leave of court.

   Sections 8646, 8647, How. Stat., authorize the filing of an information by leave of the court in cases where it is claimed that a business is being carried on under the guise of a legal corporate existence, for the purpose of manufacturing, not authorized by the articles of association; but this proceeding not being under these sections, the question whether the respondent is exercising any franchise or privilege not conferred by law calls for no discussion.

4. The business of preparing ice in its natural condition for use as an article of consumption, in the manner described in the replication to the first plea in this case, is comprehended in the statute authorizing the formation of corporations for manufacturing purposes.

Information to test right to exercise franchise of a corporation. Heard November 3 and 4, 1885. Decided January 20, 1886.

*Moses Taggart*, Attorney General, *C. J. Reilly* and *Otto Kirchner*, for relator:

The information is filed under section 8635, How. Stat.,

and the main question presented by the record is whether the gathering of ice, formed naturally, in the Detroit river or Lake St. Clair, the storing and vending of the same is a "manufacturing business" within the meaning of the second section of Act 41, Session Laws of 1853, being section 4004, How. Stat.

A corporation cannot be formed in this State except under a general law authorizing it, and we are not aware of any statute authorizing the formation of a corporation for the purpose of carrying on the business of harvesting ice, and afterwards vending it as an article of merchandise, unless such a business is a "manufacturing business" within the meaning of the act cited. What is a manufacturing business? What few cases we have been able to find upon the subject, we submit: *Dudley v. Jamaica Pond Aqueduct Corporation*, 100 Mass. 184; *Byers v. Franklin Coal Co.*, 106 Mass. 134; *Lawrence v. Allen*, 7 How. (U. S.) 790; *Merchants & Manufacturers' Bank v. Stone*, 38 Mich. 786.

In this case there has been no change either in form, character or quality of the article. It is ice when formed in the Detroit river, ice when stored, and simply ice when finally sold and delivered to the company's patrons. If the cutting, storing and vending of ice is a manufacturing business, then is farming a manufacturing business. In each case the product is the result of natural forces, and in each case men and machinery are employed to harvest and garner it.

*Russell & Campbell* and *John G. Hawley*, for respondents:

The only legal issue in this case is whether the respondents are legally incorporated: *Nelson v. McArthur*, 38 Mich. 204. The regularity of the steps taken to incorporate for the purpose of manufacturing ice, is admitted by the replication, but it is alleged that the business in which the corporation intended to engage, and has carried on, is not a manufacturing business. For this offense there is an appropriate remedy: How. Stat. § 8646. Under this section upon leave of the court, an information may be filed against any corporation "whenever it shall exercise any franchises not conferred upon it by law;" the corporation is a party to the proceeding and the appropriate judgment would be that the defendant be excluded from exercising the non-conferred franchise or privilege. The corporation would not be dissolved, but would still remain a legal corporation capable of exercising all its legal functions.

What the intent of the corporation was in organizing, except as expressed in the articles of association, it is incompetent to inquire into: *State v. Kingan*, 51 Ind. 142.

As to the business of respondents falling within the scope of the statute, see *Schriefer v. Wood*, 5 Blatchf. 215; *U. S. v. Hathaway*, 4 Wall. 404; *U. S. v. Quimby*, 4 Wall. 408.

CHAMPLIN, J. This is a proceeding by information in the nature of a quo warranto to determine the rights of respondents to exercise the franchises of a corporation organized under "An act to authorize the formation of corporations for mining, smelting, or maufacturing iron, copper, mineral, coal, silver, or other ores or minerals, and for other manufacturing purposes," approved February 5, 1853. The respondents pleaded to the information, therein setting forth, (1) articles of association executed by them under and by virtue of the above act, on the fifth day of January, A. D. 1874, and duly filed as required by law, and amended articles of association executed on the third day of April, 1882, and duly filed. (2) That the relator has been a stockholder in such corporation for more than eleven years, and was then a stockholder therein; and from January 1, 1874, to April, 1883, the relator received dividends, was president and director of said company, was actively engaged in performing the duties pertaining to his position, and received a salary for his services. (3) That the respondents are the directors of said Belle Isle Ice Company, and as such manage and control its business; that there are other persons besides the relator and these respondents who are stockholders in said company, and the plea proceeds to give their names, the number of shares held by each, and states that their residence is in Wayne county, where their business is carried on. To the second of these pleas the Attorney General demurred, and he replied to the first and third.

In his replication to the first plea he sets up and states that the several persons in said plea named did not, by the said articles of association, associate according to the act therein named, for the purpose of engaging in and carrying on any kind of mining or manufacturing business, because said per-

sons entered into the said articles of association for the purpose of entering into the business of gathering ice as it was formed naturally on Detroit river and Lake St. Clair, and of storing said ice, and vending the same, as an article of merchandise, to the public generally, and for no other purpose whatsoever. The replication then asserts that its business hitherto has been confined to gathering, storing and vending the ice, and describes the method and appliances used in conducting and carrying on such business. This replication is demurred to by the respondents for two reasons:

(1) That the matters set forth do not show that the respondents were acting as a corporation under the name of the "Belle Isle Ice Company" without then and there being legally incorporated, or without any legal warrant or authority therefor.

(2) That the matters set forth in the replication do not show that the business carried on by the Belle Isle Ice Company was not a manufacturing business, and as such could not lawfully be conducted by a corporation organized under the laws of the State of Michigan, as in said first plea mentioned.

The first point stated in the demurrer appears to me to be well taken. Section 8635, How. Stat., authorizes the Attorney General to file an information in the nature of a quo warranto against individuals, upon his own relation, or upon the relation of a private party, without leave of court, when any association or number of persons shall act as a corporation within this State without legally being incorporated. The information filed charges that the respondents "did act and do now act, as a corporation in this State, under and by the name of the 'Belle Isle Ice Company,' without then and there being legally incorporated, and without any legal warrant or authority therefor." Section 8655 provides that whenever judgment shall pass against a person or corporation that has been adjudged guilty of unlawfully holding or exercising any franchise or privilege, judgment shall be entered that such defendant be ousted and altogether excluded from such franchise or privilege, and the next section authorizes the court to impose a fine not exceeding $2,000. It appears

59 MICH.—11

by the articles of association set up in the plea of respondents that the respondents, with others, are associated and incorporated under the act aforesaid, as declared in such articles, for the purpose of putting up, packing, and manufacturing for market, Detroit river and lake ice, and distributing and selling the same.    The law requires the articles of association to state distinctly and definitely the purpose for which the same is formed.    If it does not state a purpose for which the statute authorizes a corporation to be formed, it would not be legally incorporated, and its articles would afford no warrant for the exercise of corporate action. If it does state such a purpose, and if the other requirements of the law are complied with, it is a legal corporation, and authorized to act as such.    In either case the articles themselves are the sole criterion to ascertain the purpose for which it was formed, and the intent must be gathered alone from the written instrument, and cannot be aided or varied or contradicted by testimony or averments *aliunde* the instrument itself.    The question, therefore, is, is the purpose set forth in the articles such as the statute authorizes the formation of corporations to carry on ?    We think it is.    Its expressed purpose is to manufacture for market Detroit river and lake ice.    It was not necessary for the articles to state the means or methods of manufacture, nor are we to presume that the undertaking would be impossible of accomplishment.    If under the guise of a legal corporate existence for the purpose of manufacturing, the Belle Isle Ice Company are carrying on or conducting a business not authorized by its articles of association, or conferred upon it by law, the statute provides that an information in the nature of a quo warranto may be filed against such corporation to test its right to exercise such franchise or privilege; but leave of court must be first obtained to file such information. How. Stat. §§ 8646, 8647.    The present proceeding is not under these sections of the statute, and hence the question whether this corporation is exercising any franchise or privilege not conferred by law calls for no discussion.

My brethren think that the point stated as the second

ground of demurrer is likewise well taken. The replication sets forth the manner in which the Belle Isle Ice Company conducts its business as follows:

"Said company owns and leases various river and lake fronts upon the Detroit river and Lake St. Clair during the winter months. When the ice has formed by a natural process, without-the aid of any artificial means whatsoever, and of a thickness sufficient for use, it is cut precisely as it is formed by the natural process of freezing on said lake or river, and stored in ice-houses owned by said company. The manner of cutting said ice is and has been as follows: Any snow which may have fallen upon the ice is scraped and shoveled off by means of scrapers drawn by horses, and by hand shovels used by men. The ice is then marked off into squares of twenty-two inches in width, a hand-marker being first used to lay out the lines, after which a marker drawn by horses is used, which cuts lines from two to four inches in depth into the ice. Ice-plows, also drawn by horses, follow into these lines, cutting the ice to a depth of from six to fourteen inches, and the remaining thickness of ice is sawed through by means of long saws operated by hand, or is broken off by breaking bars, and separated from the solid mass of ice. The ice thus cut is floated to the foot of inclined slides or elevators leading to the ice-houses where it is to be stored, and is hoisted up by tackle operated by steam or horse power, and conducted to the ice-houses, where it is packed in layers, and covered with some non-conducting material, such as marsh hay or saw-dust. As the ice is required for use, it is transported to large ice-barges built for the purpose, and capable of holding 100 tons of ice, each taken to proper distributing points in the city of Detroit, where the ice is cut into smaller pieces suitable for consumption, and placed in covered wagons, and delivered to customers. In the course of the business, as conducted by said Belle Isle Ice Company, a large number and variety of tools are necessary for clearing, marking, sawing, chopping, and handling the ice, as heretofore fully stated, before it is in proper shape to be delivered to customers, and also ice-houses, ice-barges, wagons, and other implements, and a large force of men."

Worcester defines "manufacture" as follows:

"(1) The process of making anything by art, or of reducing materials into form fit for use by hand or by machinery; as 'an establishment for the manufacture of cloth.'

"(2) Anything made or manufactured by hand or manual dexterity, or by machinery."

The same word, as a verb, he defines

(1) "To form by manufacture, or workmanship, by the hand or by machinery; to make by art and labor."

The process described in the replication certainly does show that the ice is reduced into form fit for use both by hand and by the use of machinery, and the answer of the respondents shows that this is done by the outlay of capital, at least of $50,000, and the quantity thus manufactured annually is about 30,000 tons. It is very likely that the garnering and preparation of ice fit for consumers of the article falls very near the line. True, its natural condition is not changed. The article itself is a natural product, as described in the replication. It is ice when it is taken from the river, and it is ice when delivered to consumers. The form alone is changed. It is reduced in size, and delivered in quantities to suit the convenience of the patrons of the company. But it is not necessary, to constitute the commodity a manufactured article, that a chemical change should be wrought in the thing manufactured. Iron manufactured from iron ore remains iron. Cotton gathered from the boll and, by means of complicated machinery, manufactured, becomes the cotton of commerce. Lumber is manufactured from logs or timber, simply by changing its form. And it has been held that grinding bones to produce the bone dust of commerce was manufacturing, within the meaning of the revenue laws of the United States: *Schriefer v. Wood*, 5 Blatchf. 215. So it was held by the Supreme Court of the United States that timber split into staves, or into long pieces designed for shovel handles, was "manufactured," and not covered by the reciprocity treaty of 1854. *U. S. v. Hathaway*, 4 Wall. 404, 408.

The statute, which was designed to foster and encourage manufactures, should receive a liberal construction, and one in harmony with the public interests; and while it was not enacted to lend aid to trivial or unworthy objects, it should

not be restricted in its operation to exclude such purposes as tend to promote the public convenience or necessities.    The use of ice as an article of daily use and consumption in all our larger towns has constituted the article one of prime necessity in the various uses to which it is applied, and whether manufactured chemically, or formed by natural processes and reduced by manual labor or machinery to form fit for use, the business, as the majority of the court hold, is comprehended in the statute authorizing the formation of corporations for manufacturing purposes.

Speaking for myself, however, I must say that if this were a proceeding under sections 8646 and 8647, to test the right of the Belle Isle Ice Company to carry on the business set forth in the replication, I should not consider that business a manufacturing business within the meaning of the law, for reasons which are set forth in the opinion of Mr. Justice Danforth, in the case of *People v. Knickerbocker Ice Co.*, 99 N. Y. 181, and to my mind are very satisfactory.

It follows from what has been said that the demurrer must be sustained, which result renders the discussion or decision of the other questions raised by the pleadings unnecessary.

CAMPBELL, C. J., and MORSE, J., concurred.

SHERWOOD, J., did not sit.