## WATTON v. CRUCE *et al.*

No. 3953. Opinion Filed October 27, 1914.

(143 Pac. 1152.)

`1.` **CORPORATIONS—Organization—Statute Authorizing—"Educational Corporation."** A private corporation, promoted to "collect, arrange, classify, and display at the Jamestown Exposition the agricultural, horticultural, mineral, manufacturing, and other divers resources of the state of Oklahoma," is educational in its primary object, and was authorized to be formed under section 930 of the Statutes of 1893, as amended by the Act of March 3, 1903 (Sess. Laws 1903, c. 9, art. 1, sec. 1), providing that private corporations may be formed for the purpose of "mining, manufacturing and other industrial pursuits, * * * literary, educational and scientific and historical associations."

2. **PARTNERSHIP—Corporate Stockholders and Officers—Liability as Partners.** Neither the stockholders nor the officers and directors of such corporation are liable as partners for its debts.

(Syllabus by Galbraith, C.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Action by H. C. Watton against Lee Cruce and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Fred Ptak* and *Paul P. Pinkerton,* for plaintiff in error.

*Ledbetter, Stuart & Bell,* for defendants in error.

Opinion by GALBRAITH, C. The writ of error in this case was sued out to review the judgment of the trial court sustaining a demurrer to the amended petition. The defendants in error were sued as partners on an account for labor performed and services rendered under an oral contract entered into with the Oklahoma-Jamestown Exposition Company. The amended petition alleged, in part, as follows:

"That heretofore, on or about the 8th day of January, 1907, the above-named defendants associated themselves together under the firm name and style of the 'Oklahoma-Jamestown Exposition Company,' and did pretend and attempt to organize a corporation under the laws of the territory of Oklahoma for the following purposes, as set out in their pretended articles of incorporation, hereinafter referred to, a copy of which is attached as 'Exhibit A,' to wit: To collect, arrange, classify, and display at the Jamestown Exposition the agricultural, horticultural, mineral, manufacturing and other divers resources of the State of Oklahoma. To build at the Jamestown Exposition a building to be known as the 'Oklahoma State Building,' and to suitably furnish the same and to keep the same open for the reception and entertainment of the public during the exposition. To appoint such officers, agents, and employees as may be found necessary, and to do and perform all necessary acts to successfully carry out the purposes of this corporation."

The amended petition further alleged:

"That although the pretended articles of incorporation were executed by said' defendants and filed with the secretary of the territory of Oklahoma and notwithstanding a pretended certificate charter of articles of incorporation were issued by said secretary of the territory of Oklahoma, no such corporation was legally organized, or could be legally organized, by said defendants under the name and style and for the purposes specified in said articles of incorporation, for the reason that under the laws of the said territory of Oklahoma no corporation could be legally organized for any of the purposes stated in said articles of incorporation."

And further charged:

"That on or about the 8th day of July, 1907, said copartnership, firm, or association, through one of its authorized agents, to wit, A. W. McKeand, did enter into a verbal contract with the plaintiff, whereby the plaintiff was to make and furnish lantern slides or stereopticon views at the agreed price of 60 cents each" —and that 750 slides were furnished under said contract. That $150 had been paid on the account, and that $334.10 remained due, for which amount judgment was prayed. The defendants interposed a demurrer as follows:

"First.   That said amended petition does not state facts sufficient to constitute a cause of action in favor of plaintiff, and against the defendants or any of them.   Second.  That the said amended petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants in this:   That this cause of action, if any, in this case is against the Oklahoma-Jamestown Exposition Company, and under the laws of the state of Oklahoma the directors and stockholders are not liable for the debts of the corporation."

This demurrer was sustained, and the plaintiff, electing to stand on his petition, appealed from such order, and assigns as error the sustaining of the demurrer.

It is conceded by counsel that if the laws of Oklahoma Territory authorized the organization of a corporation for the purpose set out in the articles of the Oklahoma-Jamestown Exposition Company, the defendants were not liable in this action and the demurrer was properly sustained.

Section 930, St. Okla. 1893, as amended by the act of March 11, 1903 (Sess. Laws 1903), at page 136, reads as follows:

"Private corporations can be formed by the voluntary association of three or more persons upon complying with the provisions of this chapter, for the following purposes, namely: Mining, manufacturing, and other industrial pursuits,   *   *   *   literary, educational and scientific and historical associations.   *   *   *"

The question arises, Was authority given by this statute to organize a corporation whose object was "to collect, arrange, classify, and display" at the Jamestown Exposition the agricultural, horticultural, mineral, manufacturing, and other divers resources of the state of Oklahoma, and to erect a building and to furnish the same where the products might be exhibited to the public attending said exposition.   The articles of incorporation also provided that the places where the principal business of the corporation should be transacted were at Oklahoma City, Okla., and Norfolk, Va.   The principal purpose for promoting this enterprise was "to collect, arrange, classify, and display" the products of Oklahoma at the Jametown Exposition.  Although this

company had a designated capital stock, and presumably issued shares of stock, it was not organized, or attempted to be organized, for the purpose of profit. If its prime object was educational, can authority for its organization be found in the statute above quoted?

We have not been furnished by counsel with the citation of any case construing a statute where this exact point was determined, and we presume that their failure to cite such authority results from the fact that they were unable to find them, since, after an independent investigation, we are frank to confess that we have not been able to find a single case where the exact question has been adjudicated. The case of *Carver Merc. Co. v. Hulme,* 7 Mont. 566, 19 Pac. 213, is cited, wherein the Supreme Court of Montana construed a provision of a statute like our own which authorized a corporation to be formed for "mining, manufacturing and other industrial pursuits,". and the question at issue was whether a mercantile business, buying and selling goods, was "an industrial pursuit," within the provision of the statute, and the court held that it was.

In the case of *Agua-Fria Copper Co. v. Bashford-Burmister Co.,* 4 Ariz. 203, 35 Pac. 983, the Supreme Court of Arizona construed a similar statute, in a case involving the same question, and announced the same result, *i. e.,* that a mercantile business was an "industrial pursuit," and could be incorporated under a statute which authorized corporations to be formed for "mining, manufacturing and other industrial pursuits."

In the case of *Wells Fargo Express Co. v. Northern Pacific Ry. Co.* (C. C.) 23 Fed. 469, the issue was as to whether an express company, incorporated for the purpose of transporting packages, money, etc., from place to place, was authorized under a governing statute providing that corporations might be formed for "mining, manufacturing, and other industrial pursuits." It was held that the express business was "an industrial pursuit" within the meaning of the statute.

In *Attorney General v. Lorman,* 59 Mich. 157, 26 N. W. 311, 60 Am. Rep. 287, the court held that in the state of Michigan a company which owned and leased various river and lake fronts upon the Detroit river and Lake St. Clair, and during the winter months cut ice therefrom, which was placed in storehouses and later sold to the consumer, was engaged in the "manufacturing" business, and was properly organized under a statute authorizing manufacturers to incorporate.

In the case of *Carpenter v. Historical Society* in the Surrogate's Court of New York, 2 Dem. Sur. 574, the issue was whether the Historical Society could be incorporated under a statute which authorized "literary" societies to be incorporated. The court said:

"The very word 'literary' is defined to signify pertaining to letters or literature, and 'literature' embraces history, while 'historical' is defined as 'containing history or the relation of facts.' The object of the 'Historical Society of the County of Westchester' is, as I understand it, for the members to gather up facts, existing in some vague and crude form, regarding the past history of the county, to write them out, and read, at the meetings of the society, the papers so written. Thereupon discussions arise, etc. At the opening of their sessions, I understand, one or more addresses are made. All the papers so read and discussed are preserved by the society. Thus, I think, it will be seen that the Historical Society is pre-eminently a literary society."

The foregoing cases are cited, not as controlling authority in the case at bar, but for the purpose of showing the liberality courts exhibit in construing the enabling statute so as to sustain the legality of an incorporated company organized in good faith and for a legitimate purpose. It will be observed that the rule is that such statute should be liberally construed in order to sustain a lawful enterprise.

In like manner should our statute be construed. The defendants in error did not attempt to promote this corporation for personal and individual aggrandizement, but for the public good. They, in good faith, undertook to organize a private corporation

for the purpose of informing, advising, and giving knowledge to strangers in regard to the resources of Oklahoma, *i. e.,* educating them. The primary purpose of the incorporation was educational —the dissemination of light, facts. The promoters were prompt- ed by public spirit and patriotic and unselfish motives. The ob- ject sought to be attained was lawful and praiseworthy, and not opposed to the public policy of the state.

"Educational" is defined, "pertaining to education," while "education" is defined to be the "imparting or acquisition of knowledge."

"Education, in a broad sense, with reference to man, com- prehends all that disciplines and enlightens the understanding, corrects the temper, cultivates the taste, and forms the manners and habits; in a narrower sense, it is the special course of train- ing pursued, as by parents or teachers, to secure any one or all to these ends. Under *physical education* is included all that re- lates to the development and care of the organs of sensation and of the muscular and nervous systems. *Intellectual education* comprehends the means by which the powers of the understand- ing are developed and improved, and knowledge is imparted. *Es- thetic education* is the development of the sense of the beauti- tul, and of technical skill in the arts. *Moral education* is the cul- tivation of the moral nature. *Technical education* is intended to train persons in the arts and sciences that underlie the practice of the trades or professions." (Cent. D. & Enc.)

To collect, arrange, classify, and display the agricultural, horticultural, mineral, manufacturing, and other resources of the state of Oklahoma would certainly "enlighten the understand- ing and cultivate the taste of the person" and "tend to develop a sense of the beautiful" in all who witnessed this exhibition, and would, therefore, come within the broad definition of "education," and within the statute, and a corporation organized for such pur- pose would find authority for its creation in the governing stat- ute above quoted.

It is alleged that the defendants prepared their articles of in- corporation and filed them with the secretary of the territory of Oklahoma, and that a certificate of incorporation was duly is-

sued, and thus the regularity of the incorporation appears. The only question raised being the want of authority in the statute, we are constrained to hold that this statute authorized the corporation to be formed for the purposes named, and the demurrer was therefore properly sustained.

However, there is another ground upon which the ruling of the court might be sustained. Section 933, Wilson's Rev. and Ann. St., 1903, reads as follows:

"The due incorporation of any company, claiming in good faith to be a corporation under this chapter, and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally, in any private suit to which such *de facto* corporation may be a party; such inquiry may be had, and action brought, at the suit of the territory, in the manner prescribed in civil procedure."

And the construction of that statute as given by this court in *Higbee v. Aetna Bldg. & Loan Ass'n,* 26 Okla. 327, 109 Pac. 236, Ann. Cas. 1912B, 223, would apparently preclude the plaintiff in error from questioning the legality of the incorporation of the Oklahoma-Jamestown Exposition Company in this suit.

We think the ruling of the trial court may be sustained on either ground, and we, therefore, recommend that the order appealed from be affirmed.

By the Court: It is so ordered.