THE NEW BRITAIN TRUST COMPANY ET AL., TRUSTEES UNDER WILL OF ELMER L. STYLES, *vs.* MRS. M. BERNICE STODDARD ET. ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 14th—decided June 5th, 1935.

*Cyril F. Gaffney,* with whom, on the brief, was *Bernard F. Gaffney,* for the defendants M..Bernice Stoddard *et al.*

*George A. Clark,* for the defendant Lucius Styles, individually and as administrator

*Mortimer H. Camp* appeared for the plaintiff but did not argue the cause.

HAINES, J.  By the second clause of his will, Elmer L. Styles of New Britain gave the residue of his estate to his wife for the term of her life or so long as she remained his unmarried widow, to have the use and enjoyment thereof and the further right to use so much of the principal of the fund during that period as the Court of Probate having jurisdiction should deem necessary for her support and the maintenance of her position in life.

By the fourth clause the testator provided that upon the termination of the life estate of his widow the sum of $4000 should vest in M. Bernice Stoddard his daughter, in trust for his two grandsons, John Styles Stoddard and Nathaniel Styles Stoddard "to use the principal and income of said fund in whatever way

may be deemed best to assist in the education of my grandsons." It is the interpretation of this fourth clause of the will which we are asked to determine, thereon depending the answers to the two questions submitted to us, viz.: (1) "Whether the testator intended that said trust fund set up under paragraph four of the will should now be used for the adult education of his two grandsons . . . ? (2) Whether the testator intended that said trust fund . . . should now be used to improve the present education of his two grandsons . . . ?"

The will was executed in August, 1909, at which time the testator's wife was sixty-one years of age and his named grandsons were, respectively, four and two years of age. The widow lived until June 26th, 1934, when she was eighty-six; and when her life estate thus terminated the grandsons were, respectively, twenty-nine and twenty-seven. The elder, John, had attended Choate School in Wallingford, and for one year Bowdoin College in Maine. Before the life estate of his grandmother was terminated he married, and has two children. His wife died and he again married and is employed. The younger grandson, Nathaniel, attended Choate School for one year, and married after the termination of the life estate and is now maintaining a family, being in the employ of the General Electric Company at Lynn, Massachusetts. One of the stipulated facts is that both grandsons "are now desirous of improving their present education."

The named plaintiff herein and John E. Stoddard of Meriden—a son-in-law of the testator—are the trustees of the life estate of the widow and are seeking by this action to determine to whom they shall now surrender the fund. On behalf of the grandsons it is contended that the trust continues in force and should be made effectual by applying both income and

principal to assist in their education in whatever way their mother as trustee may deem best. This is contested by other parties in interest who say that under the circumstances recited, the trust failed upon the death of the life tenant and the fund now becomes a part of the testator's residuary estate.

The answer to the question thus raised depends upon the ascertained intent of the testator, and this intention "may be gathered not only from within the instrument itself, but also from the circumstances which surrounded the testator when the will was made, including the situation and condition of his estate, his relations to his family and beneficiaries, and their situation and condition. The construing court will put itself as far as possible in the position of the testator, in the effort to construe the uncertain language used by him in such a way as shall, conformably to the language, give force and effect to his intention." *Fritsche* v. *Fritsche,* 75 Conn. 285, 287, 53 Atl. 585.

These two named grandsons of the testator had not reached the ordinary school age when he thus sought to provide assistance toward their future education. The need was not immediate, and the intended assistance was made available only after the death of their grandmother, who was then sixty-one. Had she died during their school years the application of the fund as directed would obviously have carried out the intent of the testator; but she lived to an advanced age and the fund did not become available until these grandsons had received their schooling, had established themselves in their employment, and taken their places in the communities in which they had chosen to live.

It is highly improbable that the testator foresaw this turn of affairs. We must determine the testator's intent by his language and the circumstances then existing, with no attempt to provide for changes in cir-

cumstances then unanticipated. Such subsequent events cannot affect the construction of a will; *Bartlett* v. *Sears,* 81 Conn. 34, 41, 70 Atl. 33; *White* v. *Allen,* 76 Conn. 185, 189, 56 Atl. 519; and "the meaning of [a testator's] words is not changed because, after they were written, a certain event [did or did not occur]." *Weed* v. *Scofield,* 73 Conn. 670, 677, 49 Atl. 22.

What was the meaning of the testator in the use of the word "education"? That is a "broad and comprehensive term." *Lyme High School Association* v. *Alling, Attorney General,* 113 Conn. 200, 207, 154 Atl. 439; *Masonic Building Association* v. *Stamford,* 119 Conn. 53, 59, 174 Atl. 301. It has a variable and indefinite meaning like the word "family." *St. John* v. *Dann,* 66 Conn. 401, 405, 34 Atl. 110. It comprehends in its broadest significance the acquisition of all knowledge tending to develop and train the individual and when used in this sense is not limited to the years of adolescence or to instruction in the schools; Century Dictionary; *Watton* v. *Cruce,* 44 Okl. 186, 143 Pac. 1152; 19 C. J. 1014. However, this is not the meaning ascribed to it in common speech. It is popularly and far more commonly associated with youth and the instruction received from their teachers. Thus, Webster's Collegiate Dictionary characterizes it as "the general and formal word for schooling . . . especially in an institution of learning," and the same definition is found, among others, in Webster's New International Dictionary (2d Ed.).

In the early case of *Adams* v. *Spalding,* 12 Conn. 350, the testator provided for such of his nephews as obtained a liberal education and the degree of bachelor of arts from an approved college in the United States and reached the age of twenty-two years. Upon the death of the testator, one of the nephews was fifty-three and

another thirty-five, each having a wife and children. It was contended in behalf of these nephews that they might yet obtain a liberal education as prescribed by the will and become entitled to the legacy. This court said of this claim (p. 360): "The testator knew, what everybody . . . knows, that the colleges of this country had been founded and endowed for the education of young men, and not of old ones; and he intended these legacies to aid his young nephews in obtaining a liberal education, according to the usual and well known course of American colleges. And we hold, what the testator never supposed would be doubted, that these legacies, intended for the education of his nephews, not having been required for that purpose, until after the legatees became settled in business and considerably advanced in years, had been waived and relinquished, and had fallen into the residuum of the estate."

In *Bates* v. *Spooner*, 75 Conn. 501, 54 Atl. 305, a testator created a trust for his children and for "the maintenance and support and education of any family which either of them may have." We said of the word "education" as thus used: "The provision is naturally referable to the education of their children during minority, and to be construed as thus limited." A further indication of what was in the mind of the testator in the present case, is found in the fact that the fund was committed to the care, judgment and control of the mother of these boys and was stated to be to "assist" in their education, a task which rested primarily upon their parents. At the time the life estate terminated, certainly the task of the parents had been fully completed and no duty rested upon them to further "educate" these mature sons who had long passed from parental control and assumed their own obligations in the world.

We can find nothing in the language or circumstances which would justify us in holding that this testator used the word "education" in any other than its popular and generally understood significance. Under the well known rule of construction this popular meaning must govern our interpretation rather than the broader and less common one. *Leake* v. *Watson,* 60 Conn. 498, 506, 21 Atl. 1075; *Connecticut Trust & Safe Deposit Co.* v. *Chase,* 75 Conn. 683, 692, 55 Atl. 171; *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33. We deem this conclusion as to the meaning of his words to be expressive of the testator's actual intent.

We give a negative answer to both the questions propounded to us.

No costs will be taxed in this court.

In this opinion the other judges concurred.