[Civ. No. 4453. Fourth Dist. Oct. 29, 1952.]

Estate of MARGARET HETZEL WHITE, Deceased. FIRST NATIONAL BANK IN SANTA ANA, Respondent, v. JOSEPH LINN HETZEL, Appellant.

Head, Jacobs & Corfman and Robert E. Jacobs for Appellant.

Forgy, Reinhaus & Forgy and Nelson Kogler for Respondent.

GRIFFIN, J.—On October 24, 1923, Margaret Hetzel White executed her will and created a life estate and testamentary trust in her home in Laguna. She gave all of her personal property to her husband, William Henry White, and the income and use of the home so long as he lived. Subject to this life estate she devised the home to the First National Bank in Santa Ana, as trustee, to hold in trust "subject to the following purposes":

"That said Trustee shall ascertain how many children are then living, being the issue of my husband's son and daugh-

ter, who are named respectively, Reginald M. White of Rochester, New York, and Daisy Colebeck of Bellwood, Pennsylvania. That at the present time there are living the issue of said Daisy Colebeck, two boys one named Paul Frederick Colebeck, and the other Gilbert Colebeck. That after ascertaining the number of children as aforesaid who are then living said *trustee shall* proceed to *sell* said real property as soon as the same can advantageously be done *and deduct* from said proceeds of the sale of said property, 1st, an amount of $1000.00 which it shall pay to my nephew, Joseph Linn Hetzel, of Southport, Connecticut, and 2nd an *amount* equal to the *number of months by which I survive my said husband,* (Apparent error as to the term "by which I survive my said husband" is corrected in the decree of distribution which reads: "by which the said Margaret White is survived by her said husband",) multiplied by $30.00 and the total amount so arrived at *shall be divided into* as many *portions* as there are grandchildren of my said husband.

"There *shall be paid* by said Trustee *for the education* of each of said grandchildren of my said husband, in branches higher than those studied in high school grades the sum of $30.00 per month until each of said portions has been exhausted. If any of said grandchildren should die before graduating from high school, or if any of said grandchildren should fail to continue his or her education through the high school grades or if any of them should thereafter refuse to continue their education beyond high school grades and cessation of attending any school for a period of one year shall be conclusively be presumed that said grand child does not intend to take advantage of the *bequests* herein made, then I direct that said *Trustee shall pay* the *sums* which would otherwise *be paid to the education* of said child *for the education* of the remaining grand-children, *dividing* the *same equally* between them *until* the *said fund* secured as hereinabove provided for *has been entirely exhausted.*" (Italics ours.)

"Subject to the foregoing provisions" she gave the residue of her property to her nephew, Joseph Linn Hetzel.

On August 24, 1927, the court ordered distribution "in accordance with the provisions of the will," and in about the same language. At the time of making the will the two living grandchildren were of the ages of 8 and 12 years. The husband lived to be 90 years of age, and did not die until June 2, 1950. Accordingly, due to his longevity, no funds from the

trust were available to pay the grandchildren for their college education. At the time of the husband's death, the grandchildren were 35 and 39 years of age respectively and had completed their high school and college educations.

In August, 1950, the trustee petitioned the court for instructions, set up the will, recited the above-mentioned facts, and stated that it believed it was the intention of the decedent to benefit the said grandchildren with the proceeds of the sale of the property excepting the $1,000 to be paid to the nephew, and asked that the property be appraised and sold and that the proceeds be distributed accordingly. The property was sold for $5,426.35, and the trustee petitioned for distribution. After notice and hearing the court ordered the trust terminated and after payment of $1,000 to Mr. Hetzel, and after deducting costs, ordered that the proceeds be distributed equally to the two grandchildren. Thereafter, the court set aside this portion of the order for the purpose of considering objections to the petition of the trustee for instructions, and the petition of the residuary legatee for instructions and for distribution of the remainder of the estate to him. Thereafter, on July 13, 1951, the objections were "overruled" and the petitions of the residuary legatee were denied, from which orders he appealed.

It is appellant's position first, that the educational trust, set up by the last will and the decree of distribution pursuant thereto for the benefit of the grandchildren, failed and terminated since, at the time of the life tenant's death, and due to his longevity, the grandchildren had completed their college education. In support of this contention he cites such cases as *Adams* v. *Spalding*, 12 Conn. 350; and *New Britain Trust Co.* v. *Stoddard*, 120 Conn. 123 [179 A. 642]. He then contends that as a result thereof appellant, being the residuary legatee, is entitled to the entire proceeds of the trust estate, citing such cases as *Horton* v. *Winbigler*, 175 Cal. 149, 158 [165 P. 423], and the rule announced in 11B California Jurisprudence, page 803, section 1299.

In the construction of a will, the primary and cardinal rule to be observed is to ascertain the intent of the testator, and ordinarily, the intent of the testator is to be ascertained from the will itself. (*Estate of Emerson*, 139 Cal.App. 571 [34 P.2d 800]; *Estate of Kisling*, 68 Cal.App.2d 163, 167 [156 P.2d 57].) The cases relied upon by appellant are factually dissimilar from the instant case. In the Adams case the trust provided for the obtaining of a degree on reaching the

age of 22 years. The case held that the beneficiaries were then too advanced in years and settled in life to take under the provisions of the trust. The case also turned on the question of whether the testator intended the trust to apply to sons born after the testator's death. In the New Britain case the terms of the trust were "to use the principal and income of said fund in whatever way may be deemed best to assist" (the mother, the trustee). There the grandsons had finished their schooling and established themselves in business before the life tenancy was terminated. The question was reserved by the superior court for the advice of the Supreme Court of Errors. That court said that the trust terminated and stated at page 644:

"A further indication of what was in the mind of the testator in the present case is found in the fact that the fund was committed to the care, judgment, and control of the mother of these boys, and was stated to be to 'assist' in their education, a task which rested primarily upon their parents."

The case at bar is thus distinguishable because in the New Britain case the trust was for the purpose of assisting the mother in obtaining education for the grandchildren. ▮ In the instant trust the trustor clearly expressed the intent to pay *for the educations*. It should be here noted that the only contingencies under which the funds or "bequests" (as used in the trust so set up) should not be paid for the education of the grandchildren were (1) if any should die before graduation from high school; (2) if any should fail to continue his or her education through school grades or if any of them should thereafter refuse to continue their education beyond high school grades; and (3) "that said grandchild does not intend to take advantage of the *bequests* herein made." The instrument then provided that in the event of the happening of any of the above contingencies the trustee was to "pay for the educations" of each of said remaining grandchildren, dividing the same equally between them until the said fund secured "has been *entirely exhausted.*" (Italics ours.)

It is apparent that none of the contingencies specified has happened. Each beneficiary has secured a college education. The testator provided for a life estate for her husband and then provided that her home be sold after his death; that from the proceeds $1,000 was to be paid to appellant and the remainder was to be paid by the trustee for the education of each grandchild until "said portions have been exhausted."

It might rightfully be inferred that the trustee was directed to pay said sums directly to the beneficiaries, since no other payee was named.

The testatrix did not provide any period of time or any age at which said grandchildren should be paid for their education. Appellant is not a remainderman under the trust, but is a residuary legatee under the will and received a specific legacy. The testator did not indicate that the payments must be made concurrently with the obtaining of the education or that payment should be made only if, at the time of the death of the life tenant, the beneficiaries of the trust have not commenced or are still pursuing their college educations.

Taking the will by its four corners and reading it with the view of ascertaining the intent of the testator, it might reasonably be construed that the testatrix meant to pay for the grandchildren's college education from the funds created for that purpose if they desired to take "advantage of that bequest"; that although the fund was being accumulated for this purpose, it was not payable until the death of the life tenant; that although the grandchildren might be called upon to finance their own college education, if they did care to comply with the provisions of the trust and obtain it, they were to be paid the sums due under its provisions, even though their college education had been obtained prior to the time of the happening of the contingency which would make it payable. The trial court so construed the instrument. We believe that such construction is reasonable and according to the intent expressed in the will.

Order affirmed.

Barnard, P. J., concurred.