GUTHRIE COTTON OIL CO. v. FARMERS CUSTOM GIN et al.

No. 21541. Opinion Filed Feb. 9, 1932.

Rehearing Denied March 22, 1932.

Rainey, Flynn, Green & Anderson and Melton & Melton, for plaintiff in error.

Abernathy & Howell, for defendants in error.

McNEILL, J. The Farmers Custom Gin, a corporation, had a contract to purchase the gin of the Southwestern Cotton Oil Company at Kellyville, Okla., and on June 9, 1930, filed with the Corporation Commission a written application for a license to maintain and operate a gin under the method set forth in its application, charter and by-laws for the purpose of ginning seed cotton at Kellyville, Okla. If the Corporation Commission granted said application, the Farmers Custom Gin proposed to operate the gin which it had contracted to purchase under the new license, which would have the effect, as it contended, of putting the gin of its competitor, the Guthrie Cotton Oil Company, at Kellyville, out of business. The Guthrie Cotton Oil Company filed a written protest to the granting of said application. The protest, in part, recites as follows:

"Protestant further says that the applicant, Farmers Custom Gin Company, is a corporation organized under the general incorporation laws of the state of Oklahoma, and that under its charter and by-laws as set forth in its application, after setting aside a surplus or reserve fund and payment of dividends at a rate not to exceed 8 per cent. per annum, the remainder of the profits of the corporation must be apportioned and paid to its stockholders ratably upon the amount of products sold to the corporation by its stockholders and the amount of the purchases by its stockholders from the corporation and such corporation may apportion such profits to nonstockholders upon the amount of their purchases and sales from and to the corporation.

"Protestant further says that the applicant, Farmers Custom Gin Company, is not qualified or competent to receive a license to operate a gin at Kellyville, Okla., because of the mandatory provisions of its charter and by-laws as aforesaid, requiring it to apportion profits to its stockholders ratably upon the amount of business done by said stockholders with the corporation, as such apportionment of said profits and earnings would constitute a departure from the rates fixed by this Commission for the ginning of seed cotton, and in effect would amount to a rebate to said stockholders contrary to the Constitution, laws and public policy of this state, and contrary to the Con-stitution, laws, and public policy of the United States.

"Protestant further says that under the Constitution, laws, and public policy of the United States, protestant cannot conduct its business and apportion its profits and earnings in the manner which the applicant proposes to do, if granted a license.

"Protestant further says that the granting of a license to and the engaging in the operation of a gin by the said Farmers Custom Gin Company at Kellyville, Okla. would impair protestant's franchise by taking a portion of the business that would otherwise go to it; would constitute unfair competition and the method of conducting its business, as required and authorized by the charter under which it was incorporated and the by-laws adopted by it, would result in discrimination and class legislation in favor of the applicant and against the protestant in violation of and contrary to the Fourteenth Amendment to the Constitution of the United States.

"Wherefore, protestant prays that this, its protest, be sustained and that the application of the Farmers Custom Gin Company for a license to operate a gin at Kellyville, Okla., as prayed for by it, be denied."

The Corporation Commission on July 18, 1930, granted the application of the Farmers Custom Gin and ordered that the license heretofore held by the Southwest Cotton Oil Company, a corporation, authorizing it to construct and maintain a cotton gin for the ginning of seed cotton at Kellyville, Okla., be transferred to the Farmers Custom Gin of Oklahoma City, Okla. The protestant, Guthrie Cotton Oil Company, has appealed to this court praying for reversal of said order.

The protestant makes the following assignments of error:

"1. The Corporation Commission was without jurisdiction to make said order.

"2. Said order is contrary to the evidence.

"3. Said order is contrary to the law.

"4. Said order is contrary to the law and evidence.

"5. Said order is arbitrary, unreasonable and constitutes an abuse of authority.

"6. Said order is violative of section 7, art. 2 of the Constitution of the state of Oklahoma, in that the same would operate to deprive this plaintiff in error of its property without due process of law.

"7. Said order is violative of the Fourteenth Amendment of the Constitution of the United States, the protection of which this plaintiff in error specifically invokes, in that

same would operate to deprive this plaintiff in error of its property without due process of law, and to deny it the equal protection of the law."

Counsel for protestant state in their brief and argument as follows:

"The question in this case is whether the Farmers Custom Gin Company, a commercial gin organized under the general incorporation laws of the state of Oklahoma, has the right to distribute its earnings and profits in the manner set forth in its charter and by-laws. * * *

"The applicant does not seek a permit to operate a cotton gin 'in accordance with the laws of the state, and the rules and regulations of the Commission.' * * * But the application is for a permit to operate a cotton gin in a certain particular way; that is, in the way set out in the application and in the charter and by-laws of the applicant. * * *

"The question, therefore, is not whether the applicant is financially able to operate the cotton gin, but whether or not the applicant is competent to operate a cotton gin as a public utility, in the particular method for which the applicant seeks the permit. * * *

"It is obvious then, that if the Farmers Custom Gin Company is not authorized under the Constitution and statutes of Oklahoma to engage in the business of operating a cotton gin in the manner in which it proposes to do so, as set forth in its application, by-laws and charter, that it is the duty of the Corporation Commission to refuse the license. * * *

"Two questions are therefore presented by the protestant: (1) Can an ordinary business corporation, such as the applicant, operate a cotton gin, and distribute a large part of its property back to its patrons, based upon a patronage basis; that is, the volume of business transacted with the company by the patrons, under the Constitution, laws, and public policy of the state of Oklahoma? Has the ordinary business corporation, such as the applicant, the power to distribute its earnings and profits, or any part thereof, to its customers upon a patronage basis, dependent upon the volume of business transacted by the customer with the corporation? * * *"

Counsel for the defendants in error, the Farmers Custom Gin, contend in their briefs that the only matters presented to the Corporation Commission and involved in this appeal are:

"(1) Whether or not a corporation which will apportion a part of its profits to stockholders and nonstockholders ratably upon the amount of products sold to and purchased from the corporation, or as 'patronage dividends' be licensed as a public utility under the laws of Oklahoma?

"(2) Whether any person or corporation, other than the state, has the right to object to its method of distributing its earnings or profits."

At the threshold of this discussion, we announce that we are not construing the constitutionality of the statute which declares a cotton gin to be a public utility.

Under section 3712, C. O. S. 1921 (as amended by Laws 1929, c. 240, sec. 1), cotton gins are declared to be public utilities, and the operation of the same for the purpose of ginning seed cotton is declared to be a public business. Under section 3713, C. O. S. 1921, and amendments thereto (Laws 1929, c. 240, sec. 2), no person, or persons, or corporations of this state, shall be permitted to maintain and operate a gin for the purpose of ginning seed cotton without first having secured a license for such purpose from the State Corporation Commission. Under section 3714, C. O. S. 1921, as amended by chapter 109, Session Laws of 1925, the Corporation Commission has the power to take into consideration the necessity for the operation of the gin at the place it is located. Under this section, as amended, however, if a petition is signed by 100 citizens and taxpayers of the community where the gin is to be located, the Corporation Commission must issue a license. Under section 3715, C. O. S. 1921, the Corporation Commission, in the regulation of gins, shall have the same power and authority and be charged with the duty of regulating and controlling such cotton gins in all matters relating to the performance of public duties and the charges thereof, correcting abuses and preventing unjust discrimination and extortions, as is exercised by the Commission as to transportation and transmission companies and the power to fix rates, rules, charges, and regulations to be observed by those operating said gins.

Under the charter and by-laws as set forth in the application, the Farmers Custom Gin must apportion its net earnings and profits at least once each year, as follows:

"1. Not less than ten per cent. thereof accruing since the last apportionment shall be set aside in a surplus or reserve fund until such fund shall equal at least 50 per cent. of the paid-up capital stock issued and outstanding.

"2. Dividends at a rate not to exceed eight per cent. per annum may in the discretion of the directors be declared upon

the paid-up capital stock issued and outstanding.

"3. The remainder of such net earnings and profits to be apportioned and paid to its stockholders ratably upon the amounts of the products sold to the corporation by its stockholders and the amounts of the purchases of stockholders from the corporation, and the directors may apportion such earnings and profits in part to nonstockholders upon the amounts of their purchases and sales from or to the corporation."

From these provisions, it is to be observed that there cannot be any apportionment of the remainder of the net earnings and profits on the patronage basis until certain requirements have been complied with:

(1) There must be set aside a surplus or reserve fund. During each year ten per cent. of the net earnings and profits accruing since the last apportionment must be placed in a reserve fund until the same shall equal 50 per cent. of the paid-up capital stock which has been issued and outstanding.

(2) The directors may then declare a dividend upon the paid-up stock, restricted and limited, however, in that dividends shall not exceed eight per cent. per annum.

After these requirements have been met, the directors may then consider the distribution of the balance, if any, of the net earnings and profits to its stockholders based ratably upon the amount of their production, or the amount of their patronage, and the directors may also, within their discretion, apportion such earnings to nonstockholders upon the amount of their patronage, evidenced by their purchases and sales from or to the corporation. These provisions are not objected to by any stockholder.

This balance, or the remainder of the earnings and profits apportioned, sometimes termed patronage dividends, does not come from the ginning operations alone, but is based upon the amount of the products sold to the corporation and the amount of purchases, and not upon the amount of the stock held by the respective stockholders. If a member or stockholder does not desire to patronize the corporation, by sale or purchase, such member does not share in this portion of the net earnings and profits; and further, the stockholders agree that the directors may apportion this balance, in part, to nonstockholders based upon their patronage in the way of sales of their products to and purchases from the corporation.

An examination of these provisions of the charter and by-laws is persuasive that they are reasonable, not arbitrary and unjust, but apply to all who are similarly situated. It cannot be said that there is any discrimination against any vested or acquired right of any stockholder. The interest of the stockholders has not been disregarded, and, if these provisions are agreeable to and sanctioned by the stockholders, and they choose to have the earnings and profits of the corporation disbursed in this manner, then, under what right and authority can others be heard to object?

Section 5293, C. O. S. 1921, provides:

"The due incorporation of any company, claiming in good faith to be a corporation under this chapter, and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally, in any private suit to which such de facto corporation may be a party; but such inquiry may be had, and action brought, at the suit of the state, in the manner prescribed in civil procedure."

See Higbee v. Aetna Bldg. & Loan Ass'n, 26 Okla. 327, 109 P. 236; Watton v. Cruce, 44 Okla. 186, 143 P. 1152.

In the operation of the proposed gin the Farmers Custom Gin must at all times comply with the rules and regulations of the Corporation Commission. In determining the protest of the Guthrie Cotton Oil Company, the question is whether or not the Farmers Custom Gin can have a license to operate its gin in the manner provided for by its charter and by-laws. It is contended that the provisions of section 18 of article 9 of the state Constitution, made applicable by virtue of section 3715, C. O. S. 1921, prohibits the applicant from receiving the license applied for under its charter and by-laws. Under the Act of 1919, known as the Co-operative Corporation Act, being section 5637, C. O. S. 1921, provision is made whereby ten or more persons may form a special kind of a corporation known as a co-operative corporation. Such a corporation may engage in agricultural, dairy, live stock, irrigation, horticultural, mercantile, manufacturing, mechanical, or industrial business upon a co-operative plan, and such corporation must set aside as a surplus not less than ten per cent. of the net earnings and profits, subject to revision of the stockholders, until such fund shall equal at least 50 per cent. of the paid-up capital stock. In fact, the Farmers Custom Gin, created under the general corporation statutes, has incorporated in its charter and by-laws almost the identical statutory provisions required in the aforesaid Co-operative Act.

Counsel for the protestant contends that the order of the Corporation Commission is violative of section 7, article 2, of the Constitution of the state of Oklahoma, in that the same would operate to deprive the protestant of its property without due process of law, and that the same would be applicable under the Fourteenth Amendment of the Constitution of the United States, in that it would deprive said protestant of its property without due process of law and would deny it the equal protection of the law. Protestant contends that the Corporation Commission has power and authority to fix cotton gin rates and that cotton gins, transportation or transmission companies, each of which are under the jurisdiction of the Corporation Commission, would have no right whatever to charge any rate except that fixed by the Corporation Commission. In this connection counsel for protestant urge that a distribution of the earnings and profits in the manner sought for by the charter and by-laws would constitute a departure from the rates prescribed by the Commission. Counsel assert that any scheme or device which results in patrons getting something back in the way of money, service, or anything of value falls within the condemnation of section 18, art. 9, of the Constitution of the state of Oklahoma.

It must be remembered that the rate is established, and it is not attempted to be changed. Whatever rate is fixed by the Commission, that rate is charged to and paid by the patrons. There is no rebate herein involved within the meaning of that term as used in section 2 of the Interstate Commerce Act, and section 1 of the Elkins Act, referred to in the briefs of counsel for protestant. In fact, there is no concrete legislation in this state against rebates. There is no unjust discrimination against the protestant as is denounced by both the Interstate Commerce Act and the Elkins Act. Each patron receives his ratable proportion and in this there is no discrimination. The regulation of the rate remains with the Corporation Commission. If a co-operative gin can be licensed to carry on its operations under the same plan as now being sought by the applicant in the instant case, we are unable to distinguish, why the same right and authority should not apply to the applicant herein.

In the case of Corporation Commission of Oklahoma v. Wm. Lowe, 281 U. S. 431, 50 Sup. Ct. Rep. 397, 74 L. Ed. 945, wherein it was sought to restrain the Corporation Commission from issuing a license to the Farmers Union Co-operative Gin Company to construct and operate a cotton gin, the Supreme Court of the United States said:

"In the present instance, the authority given the appellant company (the co-operative gin) by the statute with respect to the distribution of net earnings may be regarded as a declaration that such a distribution of net earnings among patrons of cotton gins is not contrary to, but in accord with, the policy of the state, and until the contrary appears, the assumption must be that in giving effect to its policy, the state will not permit an injurious and unreasonable discrimination. * * *

"It was incumbent upon the appellee in invoking the protection of the 14th Amendment to show with convincing clarity that the law of the state created against him the discrimination of which he complained. An infraction of the constitutional provision is not to be assumed. On the contrary, it is to be presumed that the state in enforcing its local policies will conform its requirements to the federal guaranties. Doubts on this point are to be resolved in favor of, and not against, the state. * * *"

This court, in the case of Choctaw Cotton Oil Co. v. Corporation Commission, 121 Okla. 51, 247 P. 390, in an opinion by Mr. Justice Harrison which involved the co-operative amendment to the cotton gin act in reference to securing a license by the presentation of a petition signed by 100 citizens and taxpayers of the community where a gin was to be located, in speaking of the rights of cotton gins operating under competitive conditions, says:

"The legal basis for the foregoing allegation of facts is that the proviso in said chapter 109, S. L. 1925, to wit, 'Provided, that on the presentation of a petition for the establishment of a gin to be run co-operatively signed by one hundred (100) citizens and taxpayers of the community where the gin is to be located, the Corporation Commission shall issue a license for said gin, * * *' is unconstitutional and invalid, in that it authorizes the Corporation Commission to deny petitioners of equal protection under the law and to take their property without due process of law. Said proviso is part of section 3714, Comp. St. 1921, as amended by chapter 109, S. L. 1925, which requires applicants for licenses to construct a cotton gin to make satisfactory proof of the necessity for such gin.

"The contention being that the foregoing proviso denies petitioners of equal protection under the law and takes their property without due process of law, the question necessarily arises, what property rights are taken from petitioners by licensing another gin, under the foregoing proviso? What rights of any kind could the licensing of

another gin effect? It does not disturb the property of petitioners, nor prevent the free operation of their gins. The only right which could be affected by such license is the right of petitioners to operate their gin without competition, a right which is not secured to them either by the state or federal Constitution; hence, the contention as to taking their property without due process of law cannot be sustained. Neither can the contention as to their being denied equal protection under the law be sustained. If the Legislature had authority, under the doctrine of 'police power', to pass a law making cotton gins a public utility and to prescribe the conditions by which a license to operate such utility must be procured, and we are not passing upon the question whether or not the Legislature had such authority, because that question is not in this case, but if it does have such authority, then it has authority under the doctrine of 'classification' to divide operators of cotton gins into different classes and prescribe the method by which each class may obtain a license to operate."

In the case of Charles River Bridge Co. v. Warren Bridge, 11 Pet. (U. S.) 420, which involved the right of the holder of the license or franchise against competition and wherein the Charles River Bridge Company held a franchise and operated a toll bridge in the state of Massachusetts, and the state thereafter granted another franchise by the terms of which a free bridge was authorized which virtually destroyed the business of the Charles River Bridge Company, the Supreme Court of the United States, in an opinion by Mr. Chief Justice Taney, says:

"The relative position of the Warren bridge has already been described. It does not interrupt the passage over the Charles River bridge, nor make the way to it or from it less convenient. None of the faculties or franchises granted to that corporation have been revoked by the Legislature: and its right to take the tolls granted by the charter remains unaltered. In short. all of the franchises and rights of property enumerated in the charter and there mentioned to have been granted to it, remain unimpaired. But its income is destroyed by the Warren bridge, which, being free. draws off the passengers and property which would have gone over it, and renders their franchise of no value. This is the gist of the complaint. For it is not pretended that the erection of the Warren bridge would have done them any injury or in any degree affected their right of property if it had not diminished the amount of their tolls. In order, then, to entitle themselves to relief, it is necessary to show that the Legislature contracted not to do the act of which they complain; and that they impaired, or in other words, violated that contract by the erection of the Warren bridge."

For protestant to have just cause for complaint against the issuance of a license to the Guthrie Cotton Oil Company on the ground that said order is violative of section 7, art. 2, of the Constitution of the state of Oklahoma and the Fourteenth Amendment to the Constitution of the United States, it is incumbent upon the protestant to show that the alleged unconstitutional feature of the law will injure it and operate to deprive it of rights protected by the state and federal Constitutions; and, if protestant is not affected by the granting of the license, the law could not be declared, under such circumstances, at the instance of protestant, as being violative of the due process and the equal protection of the law as provided in section 7, article 2, of the Constitution of the state of Oklahoma, and the Fourteenth Amendment of the Constitution of the United States. See Southern R. R. Co. v. King, 217 U. S. 524, 54 L. Ed. 868; Standard Stock Food Co. v. Wright, 225 U. S. 540, 56 L. Ed. 1197; Williams v. Walsh, 222 U. S. 415, 56 L. Ed. 253; Plymouth Coal Co. v. Pennsylvania, 232 U. S. 545, 58 L. Ed. 719.

In the instant case, an examination of the application for a license provides for the distribution of its profits and net earnings in such proportion as meets the approval of the directors. The stockholders acquiesced and consented to operate a gin under the provisions of the charter and by-laws, which right has been granted to them by the state of Oklahoma.

The distribution of profits is a matter of regulation by the by-laws of the company, and the rights of the stockholders or shareholders are fixed thereby. The validity of these provisions in a measure is challenged by the protestant. The Legislature has seen fit to permit the distribution of the profits and earnings of the company to the judgment and discretion of the stockholders, acting through its directors. These provisions seem fair and reasonable and not in violation of the rights of any stockholders of the company, and the regulation of these profits is not attempted by the statute to be limited or restricted in any manner other than as provided for by the charter and by-laws. The rate fixed by the Corporation Commission is not attempted to be interfered with. The Corporation Commission has the statutory power and authority to regulate the rate of cotton gin companies. If the license is granted, there is no indica-

tion that the corporation will operate the gin in question in a manner not regulated by law. The protestant is not entitled as a matter of right to object to the manner of the distribution of the net earnings and profits of the applicant. Under the Choctaw Cotton Oil Company Case, supra, the Corporation Commission has a right to make a classification by dividing the operators of cotton gins into different classes and prescribe the method by which each class may obtain a license to operate. In that case the court expressly held that the licensing of another gin did not disturb property rights, and that the petitioners in that case were not entitled to operate their gin without competition, and the granting of a license in that case was not in violation of section 7, art. 2, Bill of Rights, Constitution of Oklahoma, nor of the Fourteenth Amendment of the Constitution of the United States, and did not constitute a denial of equal protection under the law in violation of either the state or federal Constitution. There appears no valid reason why the applicant should not be accorded the same privilege to operate its gin as that accorded to the co-operative gin as provided for by chapter 109, Session Laws 1925. If the protestant desires to make a similar application to that of the Farmers Custom Gin, that will be a matter for future determination by the Corporation Commission. In other words, under the statute, the Corporation Commission has exclusive charge of the regulation of cotton gins and in establishing rules and regulations in reference to their operation.

In view of the foregoing the order of the Commission is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. KORNEGAY, J., concurs in conclusion.

KORNEGAY, J. (concurring). I concur in the result in this case. It is a proceeding to review an order of the Corporation Commission granting a gin permit. It is not necessary to review the evidence before the Commission or the statements of the attorneys in detail. It was evidently the intention of the plaintiff and defendant both, in this case, to get a declaration from this court as to whether or not farmers' co-operative gins can be allowed in this state.

The first inquiry would be whether we have jurisdiction of this appeal. Nobody seems to have raised it, but it comes very near raising itself. If the validity of the acts allowing and regulating co-operative gins is to be passed on, it should be after a defense by its friends in a regular way and when the point is necessarily involved. The language bearing upon the question of the right of appeal here comes from the Constitution and also out of the cotton gin act. In Harriss-Irby Cotton Co. v. State, 31 Okla. 603, 122 P. 163, the court held that an appeal would not lie in a case somewhat similar to this. In that case section 20 of article 9 of the Constitution was reviewed, and also section 8812, Comp. Laws 1909, was reviewed. Since that time, however, the cotton ginning provisions have been amended and enlarged.

It appears that an appeal has been entertained by this court at the instance of a competing corporation as against a license issued by the Corporation Commission to its rival. The case referred to is In re Farmers Co-op. Gin Co. of Bokchito, 122 Okla. 115, 251 P. 729. The opinion is very short and says that the questions presented are identical with those in case No. 17337. Choctaw Cotton Oil Co. v. Corporation Commission, 121 Okla. 51, 247 P. 390. That was an original proceeding. In that case this court held, and declosed in the syllabus, that issuing a license to a co-operative gin was permissible under the law, both as measured by the state Constitution, and also by the federal Constitution The question of jurisdiction of this court is not free from doubt in the present case.

Light is thrown upon what is meant by appeals from the Corporation Commission by a great many cases, holding that the right of appeal is determined by the Constitution and the statutes, and that the appealable orders are such as are enumerated. As applied to the present case, the order complained of is issuing a license to a rival corporation. In so doing, the Commission followed the statute, made the inquiry as to its solvency, and as to the necessity, and granted the license. The Commission was evidently within its rights in so doing. However, if under that license the illegal practices suggested in the briefs are indulged in by the licensee, the state has its remedy, and if an individual is hurt who has a legal right of complaint, such person can have his remedy, if he be a stockholder in the company, by the usual methods, or if the complaining corporation itself is hurt, it would have full opportunity to go into a court of equity and enjoin the payment out by its rival of the funds to the one not entitled thereto. However, as shown by the

findings of the Commission generally about cotton in Oklahoma, it is not thought that the time will ever be reached in which constitutional handicaps will be interposed by any payments to the patrons of the gin company under the by-laws of the corporation that are here complained of. There will be scarcely anything to distribute to patrons unless rates are raised.

The Constitution of the state of Oklahoma provides that monopolies are against the spirit of a free and independent people. Section 32 of article 2 is as follows:

"Sec. 32. Perpetuities and monopolies, prohibited. Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this state."

Under that section, and to prevent monopolies, evidently some of the remedial legislation embodied in the co-operative marketing acts has been enacted.

An attack is made upon the provisions of the statute permitting the formation of co-operative ginning associations. By that act the Legislature of the state of Oklahoma declared its public policy as a means of preventing monopoly, and for the purpose of securing the rights of the producing element of the state.

I cannot find anything in the fundamental laws, either state or national, that would prevent it. Clearly, the Corporation Commission, in granting the license to the defendant in error, was within its rights, and the plaintiff in error here has no legal grounds of complaint, and the action of the Commission should be allowed to stand. Such is the conclusion of the court, in which I concur.